**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0569n.06
Filed: August 8, 2006

**No. 05-6502**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CHARLES E. MEECE, JR.,

     Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

     Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

                             /

**BEFORE:**    MOORE, COLE, and CLAY, Circuit Judges.

     **CLAY, Circuit Judge.** Plaintiff Charles E. Meece, Jr. appeals the August 1, 2005 order of the United States District Court for the Eastern District of Kentucky granting Defendant Jo Anne B. Barnhart, Commissioner of Social Security's motion for summary judgment and denying Plaintiff's motion for summary judgment. The district court affirmed the February 20, 2004 decision of the Social Security Administration ("SSA") that found that Plaintiff was not disabled and was therefore not entitled to disability insurance benefits under the Social Security Act ("Act"), 42 U.S.C. § 423. For the following reasons, we **REVERSE** the order of the district court and **REMAND** for an award of disability insurance benefits.

**I.**

On July 24, 1998, Plaintiff filed an application for disability benefits. Plaintiff claimed that he had been disabled since March 12, 1996. The SSA denied the application in its initial review and also upon reconsideration; however, the SSA granted Plaintiff a hearing, which took place on March 14, 2000, and a supplemental hearing took place on June 1, 2000. On July 27, 2000, Administrative Law Judge ("ALJ") David A. Gerard found that Plaintiff was entitled to disability benefits for a closed period, from March 12, 1996 to April 30, 2000.[1] The ALJ found that while Plaintiff was disabled on March 12, 1996, Plaintiff's disability ceased on February 16, 2000 due to medical improvement, such that Plaintiff was capable of sedentary work. Plaintiff did not appeal this decision.

On April 22, 2002, Plaintiff filed another application for disability benefits. Plaintiff again claimed that he had been disabled since March 12, 1996.[2] The SSA denied the application in its initial review and also upon reconsideration; however, the SSA granted Plaintiff a hearing, which took place on November 19, 2003. On February 20, 2004, ALJ Samuel A. Rodner found that Plaintiff was not disabled and therefore was not entitled to disability benefits. Utilizing the SSA's five step sequential evaluation procedure, 20 C.F.R. § 404.1520, the ALJ found that Plaintiff was not engaged in substantial gainful activity; that Plaintiff's impairments were severe; that Plaintiff's

---

[1]The ALJ found that Plaintiff's disability ceased on February 16, 2000, so that Plaintiff's disability benefits ceased on the end of the second calendar month after the month in which the disability ceased.

[2]Because Plaintiff did not appeal the July 27, 2000 decision of the SSA, that decision had preclusive effect under the principle of *res judicata*. As a result, Plaintiff amended his second disability application, such that the disability onset date was July 28, 2000.

impairments did not meet the requirements of a listed impairment; that Plaintiff could not return to his past work as a truck driver; and that Plaintiff could engage in another occupation, such as a cashier, deli cutter, food counter worker, or an order clerk.

In his analysis, the ALJ found that Plaintiff suffered from degenerative disc disease and spondylosis in the cervical spine, subsequent to an anterior cervical discectomy and fusion at C5-6. Plaintiff claimed he suffered residual pain and headaches. The ALJ found that there was no evidence to support Plaintiff's claim that Plaintiff's condition had worsened since February 16, 2000. The ALJ relied on the consultative examination of Dr. David M. Hiestand. Dr. Hiestand found that Plaintiff had a decreased range of motion for the cervical spine, but otherwise had no motor or sensory deficit. Specifically, Dr. Hiestand found "[n]o physical evidence for significant restriction in patient's tolerance for stooping, bending, reaching, sitting, standing, moving about, carrying, handling objects or ability to travel." (J.A. at 171.) Although not mentioned by the ALJ, Dr. Hiestand also observed that Plaintiff suffered from chronic neck pain, along with associated chronic headaches.

The ALJ also dismissed several pieces of evidence from Plaintiff's treating physician, Dr. Steven Wunder. Dr. Wunder had indicated on certain insurance forms that Plaintiff was unable to engage in minimal activity or sedentary work; the ALJ found that these were conclusory statements lacking explanation, and were not entitled to any weight. Likewise, the ALJ dismissed Dr. Wunder's notes of Plaintiff's office visits as cursory and without any specific clinical findings. The ALJ also dismissed a letter written by Dr. Wunder in which Dr. Wunder opined that Plaintiff would

have to miss a significant number of days of work due to Plaintiff's headaches. The ALJ found that this opinion was unsupported by Dr. Wunder's treatment notes.

The ALJ found that Plaintiff's complaints of pain due to his neck impairments and the related headaches were only partially credible. The ALJ noted that Plaintiff visited Dr. Wunder only once a year, Plaintiff did not seek stronger pain medication, and Plaintiff did not visit the emergency room for his pain. The ALJ also found that the extent of Plaintiff's pain was undercut by Plaintiff's use of over the counter pain medications, as well as Plaintiff's non-use of certain prescription pain medication. The ALJ found that Plaintiff did not need to go into a darkened room for relief and was not nauseous, behavior inconsistent with disabling headaches. The ALJ found that certain of Plaintiff's activities were inconsistent with a disabling level of pain: Plaintiff helped his children get ready for school, helped to make lunch, vacuumed once a week, swept once a week, drove once or twice a week, went grocery shopping, and went on a hunting trip in November 2002. Additionally, Plaintiff was able to engage in truck driving from November 2002 to April 2003, three or four days a week. Under these facts, the ALJ found that Plaintiff was not disabled and was therefore not entitled to disability benefits.

On August 1, 2005, the district court affirmed the ALJ's decision. Plaintiff timely filed a notice of appeal.

## II.

On March 12, 1996, Plaintiff was unloading a heavy door from the back of a truck when he heard a pop in the back of his neck and he felt a consequent sharp pain. While physical therapy initially relieved Plaintiff's symptoms, the symptoms recurred after Plaintiff briefly returned to

work. On May 3, 1996, an MRI scan revealed disc bulging at C3-4 and C6-7, as well as a significant amount of encroachment and potential cord displacement at C5-6 and, to a lesser extent, at C4-5. On October 24, 1996, Plaintiff underwent an anterior cervical discectomy and cervical fusion at C5-6. After the procedure, Plaintiff complained about intermittent pain in the neck and the left shoulder; Plaintiff later complained of daily headaches. Plaintiff's treating physician at the time, Dr. Michael J. Kramer, recommended another MRI scan; Dr. Kramer also noted, "If the scan does not show anything, I do not believe that anything more can be done and [Plaintiff] will have reached maximum medical improvement. He had two months of therapy post-operatively and additional therapy is not likely to result in any improvement." (J.A. at 193.)

The new MRI scan, dated April 23, 1997, showed small to moderate disc protrusion at C4-5 that was causing mild compression of the spinal cord. Dr. Kramer noted that a discectomy and fusion at C4-5 were not guaranteed to relieve the pain in Plaintiff's neck and his attendant headaches. A later MRI scan, dated March 1998, revealed multi-level degenerative disc disease and spondylosis. As noted by ALJ Gerard, "Dr. Kramer expressed doubt as to whether there was anything more that could be done surgically." (J.A. at 89.) Plaintiff did not undergo any additional surgical procedures.

Beginning in October 1998, Dr. Wunder began treating Plaintiff. Plaintiff engaged in various forms of physical therapy, cervical traction, and the use of a TENS unit, as well as a prescription medicine regimen to target headaches, muscle spasms, and inflammation. On August 24, 2001, Dr. Wunder noted that Plaintiff had tightness in the cervical musculature, and this tightness was causing Plaintiff's headaches. On March 18, 2002, Dr. Wunder wrote a letter that

5

stated that Plaintiff suffered from significant cervical spondylosis, multiple levels of disc protrusions and herniations, and chronic radiculopathy. On December 4, 2003, Dr. Wunder wrote a letter that stated that Plaintiff's headaches were "real and are likely emanating from the cervical spine spondylosis." (J.A. at 250.) Dr. Wunder also found that Plaintiff "would have to miss many or quite a number of days of work on average each month." (J.A. at 250.) Dr. Wunder opined that while Plaintiff could engage in sedentary work on a short-term basis, Plaintiff could not do so on a regular basis. While Dr. Wunder believed facet blocks could relieve Plaintiff's symptoms, Plaintiff did not have the financial means or medical insurance to pursue such treatment option.

At the hearing before ALJ Rodner, Plaintiff testified that he worked from November 2002 to April 2003 as a truck driver. Plaintiff worked three or four days per week. Plaintiff discontinued this work because of his increasing pain. Plaintiff testified that his pain became so severe that he vomited once or twice every two or three months. Plaintiff testified that he was taking Vioxx and Zanaflex, as well as over the counter pain medication. Plaintiff testified that while he previously took Percocet, his doctors did not allow him to take the drug for an extended period of time because of the drug's addictive quality. Plaintiff testified that he saw Dr. Wunder once a year, when Plaintiff ran out of his medication. With respect to additional treatment, Plaintiff stated that "all [Dr. Wunder] can do is tell me that he can't do nothing [sic] and I won't get no better [sic]. That's all he's told me ever since I've seen him." (J.A. at 55.) Plaintiff testified that he engaged in minor household chores, such as helping his children get ready for school, helping to make lunch, vacuuming once a week, sweeping once a month, infrequent yard work, driving once a week, and

infrequent grocery shopping. Plaintiff also testified that he went on a hunting trip with his family in November 2002.

## III.

This Court reviews the district court's decision in a social security case *de novo*. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005) (citation omitted). This Court reviews the factual findings of the ALJ to determine whether such findings are supported by substantial evidence. *Id.* (citations omitted); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "A decision is supported by substantial evidence where a reasonable mind could find that the evidence is adequate to support the conclusion reached." *Valley*, 427 F.3d at 391 (citation omitted). A decision supported by substantial evidence must be upheld, even if this Court could arrive at a different conclusion from the evidence on record. *Id.* (citation omitted). In addition, this Court reviews the ALJ's decision to determine whether the ALJ applied the correct legal standards. *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (citation omitted).

In determining whether an applicant is disabled, the SSA engages in a five step sequential evaluation procedure:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520(a)(4).

## IV.

The instant case centers around the fifth step of the sequential evaluation process. Plaintiff's first claim is that the ALJ's finding, that the opinion of Plaintiff's treating physician was entitled to little or no weight, was not supported by substantial evidence. We agree.

Under the SSA regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions, as

> these [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the applicant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* In such cases, the SSA considers several factors in assessing the weight of the opinion of the treating physician, including: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant. 20 C.F.R. §§ 404.1527(d)(2)-(d)(6). The SSA must clearly articulate the reasons underlying its decision to give a medical opinion a specific amount of weight. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(d)(2)).

The ALJ examined two medical opinions in reaching the outcome of Plaintiff's case.[3] First, the ALJ examined the medical opinion of Plaintiff's treating physician, Dr. Wunder. Dr. Wunder's ultimate opinion was that Plaintiff was unable to engage in sedentary activity on a sustained basis due to the neck pain and headaches from which Plaintiff suffered. Dr. Wunder opined that Plaintiff would have to miss "many or quite a number of days work on average each month," so that Plaintiff could not engage in employment on a regular basis. (J.A. at 250.) Second, the ALJ examined the opinion of Dr. Hiestand, a physician hired by the SSA to conduct a one time consultative

---

[3]In addition to the opinions of Dr. Wunder and Dr. Hiestand, the record also contains two physical residual capacity assessments, written by two different physicians. The ALJ did not rely on these assessments at all in his decision, and for good reason. First, the assessments were merely derivative of Dr. Hiestand's opinion, as Dr. Hiestand's opinion served as the underlying basis of the assessments. Second, the physicians who authored the assessments did not examine Plaintiff. This Court has stated that "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (internal quotation marks and citation omitted).

examination of Plaintiff. Dr. Hiestand found that while Plaintiff suffered from a decrease range of motion of the cervical spine, Plaintiff did not suffer from any other motor or sensory deficit. Dr. Hiestand opined that there was '[n]o physical evidence for significant restriction in patient's tolerance for stooping, bending, reaching, sitting, standing, moving about, carrying, handling objects or ability to travel." (J.A. at 171.) Dr. Hiestand did find that Plaintiff suffered from chronic neck pain and chronic headaches.

The ALJ gave little to no weight to the opinion of Dr. Wunder. The ALJ's rationale centered upon the factor of supportability; the ALJ found that Dr. Wunder's opinion was conclusory and was not based on sufficient medical evidence. We disagree. We first note what conditions are supported by the record and are *uncontested*. Plaintiff underwent an anterior cervical discectomy and cervical fusion at C5-6 to treat pain in his neck and shoulder. The procedure did not alleviate his pain. A subsequent MRI scan revealed small to moderate disc protrusion at C4-5 that was causing mild compression of the spinal cord. Plaintiff's treating physician at the time, Dr. Kramer, expressed doubt as to whether another discectomy and cervical fusion would alleviate Plaintiff's pain. Dr. Kramer later diagnosed Plaintiff as suffering from multi-level degenerative disc disease and spondylosis. Dr. Wunder agreed with this diagnosis. Dr. Wunder also diagnosed Plaintiff as suffering from multiple levels of disc protrusions and herniations, as well as chronic cervical radiculopathy. Dr. Wunder diagnosed Plaintiff as suffering from osteoarthritis, a diagnosis supported by a radiology report. Dr. Wunder observed that Plaintiff suffered from diminished cervical motion, an observation confirmed by Dr. Hiestand. Dr. Wunder observed that Plaintiff had positive compression testing, an observation supported by a previous MRI scan. Dr. Wunder also

10

observed that Plaintiff had chronic right C7 findings, as well as tightness and guarding in the cervical musculature. Dr. Wunder opined that Plaintiff's cervical spondylosis and disc protrusions were causing pain in Plaintiff's neck and shoulder. Dr. Wunder also opined that this pain, along with the tightness in the cervical musculature, was causing Plaintiff's headaches. Dr. Hiestand agreed that Plaintiff suffered from chronic neck pain and chronic headaches.

The only disagreement between Dr. Wunder and Dr. Hiestand was Plaintiff's ability to engage in regular employment. Dr. Wunder found that Plaintiff's pain and headaches were so severe that he could not perform even sedentary work on a regular basis. On the other hand, Dr. Hiestand found that Plaintiff, while unable to fully move his neck, was not limited in other respects, such as in Plaintiff's ability to stoop, bend, reach, sit, stand, move about, carry, handle objects, or travel. The ALJ credited the opinion of Dr. Hiestand over that of Dr. Wunder, on the basis that the consultative report of Dr. Hiestand was more detailed than the findings of Dr. Wunder. This decision was not supported by the record. While a cursory examination of Dr. Hiestand's report shows that the report in general contained many details, a more thorough examination reveals that the report contained very few details as to Plaintiff's claimed disability. Plaintiff claims that he is disabled by chronic neck pain and chronic headaches. Dr. Hiestand found that Plaintiff did in fact suffer from chronic neck pain and chronic headaches; besides these conclusions, however, Dr. Hiestand mentions very little about Plaintiff's neck pain and headaches. Indeed, almost all of the details in Dr. Hiestand's report relate to conditions that are irrelevant to Plaintiff's claimed disability. For example, Dr. Hiestand observed Plaintiff's ranges of motion for various bodily movements. Dr. Hiestand found that, with the exception of cervical motion, Plaintiff's ranges of

11

motion fell within normal standards. While these observations were no doubt necessary to rule out certain limitations of Plaintiff, these observations do not relate to Plaintiff's neck pain or headaches. In short, while Dr. Hiestand's report observed the many ways in which Plaintiff was not disabled, the report failed to confront or challenge Plaintiff's claimed disability, his neck pain and headaches.

The instant case is a textbook example of why the opinion of a treating physician is entitled to greater weight than that of a nontreating physician. It bears repeating that

> these [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the applicant's] medical impairment(s) and *may bring a unique perspective to the medical evidence that cannot be obtained* from the objective medical findings alone or *from reports of individual examinations, such as consultative examinations* or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2) (emphasis supplied). The one time consultative examination of Plaintiff conducted by Dr. Hiestand did not and could not provide sufficient details as to Plaintiff's chronic neck pain and chronic headaches, as Plaintiff's condition is complex and has been ongoing for many years. We concede that Dr. Wunder's opinion was not entitled to controlling weight, as his opinion and Dr. Hiestand's opinion were inconsistent as to the ultimate determination of disability. Under the factors enumerated by the SSA under 20 C.F.R. §§ 404.1527(d)(2)-(d)(6), however, it is clear that Dr. Wunder's opinion deserved much greater weight than that given to it by the ALJ. Dr. Wunder has treated Plaintiff since 1998. While it is true that Plaintiff visited Dr. Wunder infrequently during the later years of his treatment, this resulted from the fact that there was nothing that Dr. Wunder could do to alleviate Plaintiff's pain besides prescribing medication. The relationship between Dr. Wunder and Plaintiff was specifically focused on Plaintiff's chronic neck pain and chronic headaches. As explained, *supra*, Dr. Wunder's opinion was more than adequately

supported by the medical evidence. Dr. Wunder's opinion was consistent with that of prior physicians who had treated Plaintiff, and the opinion was also consistent with the medical evidence on record. Dr. Wunder is a specialist in physical medicine and rehabilitation, a field that is directly relevant to Plaintiff's claimed disability. All of the enumerated factors militate in favor of granting substantial weight to Dr. Wunder's opinion, as opposed to the nominal weight the opinion in fact received from the ALJ.

As a final note, a comparison between ALJ Gerard's decision and ALJ Rodner's decision is instructive as to the weight that should be afforded to Dr. Wunder's opinion. ALJ Gerard found that Plaintiff was disabled from March 12, 1996 to February 16, 2000. ALJ Gerard found that Plaintiff was disabled due to his neck pain and his headaches. This disabling level of pain was confirmed by Dr. Wunder's prescription of pain medications and anti-inflammatory medication. ALJ Gerard found that Plaintiff's disability ended on February 16, 2000, a finding that relied in part on Dr. Wunder's observation that Plaintiff's condition seemed to improve with physical therapy, cervical traction, and the use of a TENS unit. This finding also relied in part on "the absence of any opinion by treating or examining physicians fully supporting [Plaintiff's] alleged limitations." (J.A. at 91.) In other words, although Plaintiff claimed he was unable to perform even sedentary work, Dr. Wunder did not give an opinion that was consistent with such claim. In marked contrast, on the record before ALJ Rodner, Dr. Wunder specifically opined that Plaintiff was unable to perform even sedentary work on a regular basis due to his chronic neck pain and chronic headaches. Unlike ALJ Gerard, ALJ Rodner virtually ignored the opinion of Dr. Wunder, a decision that was inconsistent with the SSA regulations and the law of this Circuit: "[T]he opinions of treating physicians are

13

accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citation omitted); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986) ("[T]he opinion of the treating physician should be given greater weight than that of the government's physician. . . . This is true, however, only if the treating physician's opinion is based on sufficient medical data." (internal quotation marks and citation omitted).). The ALJ failed to give Dr. Wunder's opinion the substantial deference to which it was entitled.

## V.

Plaintiff also claims that the ALJ improperly displaced the findings of Dr. Wunder with the ALJ's own medical judgment. Specifically, Plaintiff claims that the ALJ improperly played the role of medical expert in determining that Plaintiff's assertions as to the extent of his pain were only partially credible. We agree.

In general, the credibility determination of the ALJ is entitled to "great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531 (citation omitted). The ALJ's credibility determination, however, must be supported by substantial evidence. *Id.* (citation omitted).

When a plaintiff claims that he is disabled due to pain, this Court engages in a two prong inquiry. "[W]e . . . examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* (citing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). A plaintiff need not establish

objective evidence of the pain itself under this inquiry. *Felisky*, 35 F.3d at 1039 (citation omitted). When evaluating a plaintiff's complaint of pain, the ALJ may properly consider the plaintiff's credibility. *Walters*, 127 F.3d at 531 (citation omitted). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* (citation omitted).

In the instant case, the ALJ partially discredited Plaintiff's assertions as to the extent of his chronic neck pain and his chronic headaches. The ALJ found that Plaintiff's complaint of a disabling level of pain was inconsistent with: (1) the fact that Plaintiff sees Dr. Wunder and his family physician only once or twice a year; (2) Plaintiff's use of over the counter medication; (3) the fact that Plaintiff does not need to go into a darkened room and rarely becomes nauseous; (4) Plaintiff's life activities; and (5) Plaintiff's return to work. We will address these points in turn.

Although Plaintiff sees Dr. Wunder and his family physician only once or twice a year, this fact does not support an adverse credibility determination as to Plaintiff's level of pain. The ALJ believed that Plaintiff's infrequent visits to his physicians, and Plaintiff's failure to visit the emergency room, belied Plaintiff's claim of a disabling level of pain. This belief ignores the fact that additional visits to Plaintiff's physicians or to the emergency room would yield no benefit to Plaintiff. With respect to additional treatment, Plaintiff stated that "all [Dr. Wunder] can do is tell me that he can't do nothing [sic] and I won't get no better [sic]. That's all he's told me ever since I've seen him." (J.A. at 55.) As a result, Plaintiff sees Dr. Wunder only to renew his prescriptions for medication. Thus, even assuming that Plaintiff could afford additional visits to see Dr. Wunder

15

or his family physician,[4] these additional visits could not give Plaintiff any additional relief from his pain.

Plaintiff's use of over the counter pain medication does not undercut his complaint of a disabling level of pain. This Court has found that a plaintiff's *failure* to use prescription pain medication may undermine his credibility as to a complaint of a disabling level of pain. *Warner*, 375 F.3d at 392; *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("Mr. Blacha's use of only mild medications (aspirin) undercuts complaints of disabling pain . . . ."). In this case, Plaintiff has used prescription pain and anti-inflammatory medication throughout his treatment of chronic neck pain and chronic headaches, including: Naprelan, Ultram, Robaxin, Naprosyn, Vioxx, Zanaflex, and Percocet. Plaintiff testified before the ALJ that he was currently taking Vioxx and Zanaflex, as well as over the counter medication such as Tylenol and Bayer Aspirin to deal with his headaches. While the ALJ discounted the extent of Plaintiff's headache pain due to the fact that Plaintiff's doctors failed to prescribe Fiorinal, Imitrex, or Zomig, the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence. *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *see also Pietrunti v. Dir., Office of Workers Comp. Programs*, 119 F.3d 1035, 1044 (2d Cir. 1997); *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges,

---

[4]This is highly questionable, given Plaintiff's lack of medical insurance. Although Plaintiff does receive a fixed payment through private disability insurance, and Plaintiff's wife earns a salary, Plaintiff also must provide for four children. A finding that Plaintiff could afford additional medical care would be completely speculative.

including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). While the ALJ may have prescribed different pain medication than that prescribed by Plaintiff's doctors, this decision is beyond the expertise of the ALJ and is not a legitimate basis for an adverse credibility determination.

Plaintiff's failure to seek refuge in a darkened room and Plaintiff's infrequent nausea are likewise not legitimate bases for an adverse credibility determination. Plaintiff points out that sensitivity to light and nausea are symptoms of migraine headaches. There is absolutely no medical evidence in the record that suggests that such symptoms also occur with the type of headaches from which Plaintiff suffers. The ALJ's ascription of those symptoms to the instant case was without any proper support.

Moreover, the fact that Plaintiff engages in minor life activities is not inconsistent with a disabling level of pain. "An ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 532 (citations omitted). Plaintiff testified that he engaged in minor household chores, such as helping his children get ready for school, helping to make lunch, vacuuming once a week, sweeping once a month, infrequent yard work, driving once a week, and infrequent grocery shopping. Plaintiff also testified that he went on a hunting trip with his family in November 2002. Plaintiff's ability to engage in these intermittent activities of relatively short duration does not negate the fact that Plaintiff is unable to regularly engage in work due to his pain. *Cohen v. Secretary of Department of Health & Human Services*, 964 F.2d 524 (6th Cir. 1992), is instructive in this regard. In that case, the plaintiff suffered from Chronic Epstein-Barr virus and associated chronic fatigue syndrome. *Id.*

17

at 526. The ALJ found, and the district court agreed, that the plaintiff was not disabled, as the plaintiff was able to engage in ballroom dancing twice a week, for three to four hours at a time; the plaintiff attended law school for three days a week, for three and one half hours at a time; and the plaintiff founded a national support group for persons suffering from the Epstein-Barr virus, which involved talking over the telephone for two to three hours per week. *Id.* at 529-30.

In reversing the order of the district court and awarding benefits, this Court emphasized the definition of disability:

> The issue here is whether, despite her illness, Cohen had the residual functional capacity to maintain substantial gainful employment during the period for which she now seeks disability benefits. Residual functional capacity is defined as the "maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c) (1989) (emphasis added). In determining a claimant's physical abilities, we must "assess the severity of [claimant's] impairment(s) and determine [claimant's] residual functional capacity for work activity on a *regular and continuing basis*." 20 C.F.R. § 404.1545(b) (1989) (emphasis added).

*Id.* at 530 (alterations in the original). This Court noted that the plaintiff's disability of chronic fatigue syndrome "is characterized by periods of exacerbation and remission." *Id.* While the plaintiff was able to engage in some activities, such as ballroom dancing and part time attendance of law school, the plaintiff required significant rest at other times, and the plaintiff was confined to her bed for sixteen to eighteen hours per day. *Id.* at 530-31. The Court found that while the plaintiff was able to engage in some activities for several hours at a time, her illness prevented her from working on a regular and continuing basis. *Id.* at 531. As a final note, the Court stated: "We acknowledge that this is a close case . . . . In a close case, it is well to bear in mind that '[t]he Social

Security Act is a remedial statute which must be "liberally applied"; its intent is inclusion rather than exclusion.'" *Id.* (quoting *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979)).

In the instant case, Plaintiff does not allege that he suffers from a disabling level of pain at all times that prevents him from participating in any activities, nor must he so allege in order to qualify for disability benefits. The key question is whether Plaintiff is able to engage in employment on a "regular and continuing basis." 20 C.F.R. § 404.1545(b). Plaintiff testified that his neck pain and headaches were constant; the pain was at least moderate, as Plaintiff rated the pain as between four and six on a scale of one to ten. Plaintiff testified that the pain reached severe levels, with a rating of seven to nine on a scale of one to ten. Plaintiff further testified that he had half "good days" and half "bad days." On good days, Plaintiff suffered from only moderate pain, so that he could engage in some activities. On bad days, Plaintiff suffered from severe pain, so that Plaintiff could not engage in any activities. Thus, the mere fact that Plaintiff is able to perform some household activities when his level of pain allows him to do so is not inconsistent with Plaintiff's claim that his pain prevents him from engaging in regular and continuous employment. Likewise, Plaintiff's ability to take his family on a single hunting trip is not inconsistent with Plaintiff's claim of disability. About fifty percent of the time, Plaintiff suffers from severe pain that prevents Plaintiff from engaging in any activities; the other fifty percent of the time, Plaintiff suffers from moderate pain. Such a condition, while allowing Plaintiff to engage in some activities, does not allow Plaintiff to work on a regular and continuing basis. *See, e.g.*, *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant

possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant.").

Likewise, Plaintiff's attempt to return to work despite his chronic neck pain and his chronic headaches is not inconsistent with Plaintiff's claim of disability. Plaintiff testified that he returned to work as a truck driver from November 2002 to April 2003. Plaintiff engaged in truck driving on a part time basis; as the ALJ noted, his activity fell under the threshold of substantial gainful activity. During this time, Plaintiff chose only to drive the short trucking runs. Moreover, Plaintiff testified that after two weeks of truck driving, his pain began to progressively increase. Plaintiff continued to work through the pain, until the pain reached such a level that he was forced to stop work. This case is therefore similar to *Wilcox v. Sullivan*, 917 F.2d 272 (6th Cir. 1990), where the plaintiff returned to work after being hospitalized for disabilities caused by multiple sclerosis. *Id.* at 277. During this period of employment, the plaintiff's "condition progressively worsened, to the point where his union recommended that he stop working; he was subsequently laid off." *Id.* In reversing the order of the district court and holding that the plaintiff was disabled during this period of employment, this Court stated, "[The plaintiff] should not be penalized because he had the courage and determination to continue working despite his disabling condition." *Id.* Similarly, Plaintiff's unsuccessful attempt to return to work may not be used as evidence that Plaintiff is not disabled. Like the *Wilcox* plaintiff, Plaintiff worked despite his disabling condition until he could no longer do so. This fact does not serve as substantial evidence that undermines Plaintiff's credibility with respect to his complaint of disabling pain.

In sum, the ALJ's finding that Plaintiff was only partially credible with respect to his complaint of disabling pain was not supported by substantial evidence. We concede that this a close issue, due to the deference afforded to the ALJ's credibility determination. Like the decision in *Cohen*, our decision today on this issue is shaped by the remedial nature of the Act, whose "intent is inclusion rather than exclusion." *Cohen*, 964 F.2d at 531 (internal quotation marks and citation omitted).

## VI.

When this Court gives proper weight to the opinion of Plaintiff's treating physician, Dr. Wunder, and when this Court gives proper credibility to Plaintiff's complaint of disabling pain, the record clearly establishes that Plaintiff is entitled to disability benefits. Under such circumstances, this Court may immediately award such benefits. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted). For the foregoing reasons, we **REVERSE** the order of the district court and **REMAND** the case to the district court with instructions to remand to the SSA for an award of benefits.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I respectfully dissent from the majority's decision to reverse because I believe that Administrative Law Judge Rodner's determination that Charles Meece was not disabled was supported by substantial evidence. The ALJ carefully considered evidence from treating physician Dr. Wunder and concluded that Dr. Wunder's conclusions were cursory and were not adequately supported. Moreover, the ALJ's conclusion that Meece's allegations of symptoms and functional limitations were "not totally credible" was supported by substantial evidence. In view of the high threshold of the substantial-evidence standard of review, I would affirm.