NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0636n.06

No. 18-3320

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 21, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JENNIFER NINA MORUZZI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellee. | ) | |
| | ) | |

Before: NORRIS, STRANCH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. The Commissioner of Social Security determined that Jennifer

Moruzzi was not entitled to social security disability benefits for her mental and physical

impairments because she was able to perform light work with certain limitations. Moruzzi sought

review of the Commissioner's decision in the district court, contending that the decision was not

supported by substantial evidence and was contrary to the law. The district court, overruling

Moruzzi's objections to the magistrate judge's Report and Recommendation, affirmed the final

decision of the Commissioner. For the reasons set forth below, we AFFIRM.

I.

Jennifer Moruzzi filed an application for Supplemental Security Income on May 22, 2013,

alleging that she became disabled following a "nervous breakdown" and was thus unable to work

beginning February 1, 2012. In her application, she alleged disability due to an aversion to people,

a "mental break down," back pain, a kidney cyst, anxiety, and depression. She explained that she

had stopped working as an assembly line worker in July 2000 (when she became pregnant) and had not looked for work since then.

After the Social Security Administration denied Moruzzi's application, she timely requested a hearing before an administrative law judge (ALJ), and in August 2015, an ALJ held a hearing on her application. Later that month, the ALJ issued a decision in which he determined that even though Moruzzi had moderate restrictions and difficulties, she was not disabled as defined in the Social Security Act and therefore was not entitled to benefits. "After careful consideration of the entire record," he determined that Moruzzi "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with . . . limitations." The ALJ did not find Moruzzi "fully credible as to the nature and extent of her symptoms and limitations." Furthermore, the ALJ gave "no great weight" to statements from Moruzzi's treating psychiatrist, Koteswara Kaza, M.D., because the "evaluation and treatment notes d[id] not support [Dr. Kaza's] assessments that [Moruzzi] could not perform even low stress work." The ALJ similarly afforded "little weight" to statements from Moruzzi's primary care physician, Mark R. Shivers, M.D., and the opinions of the state agency's medical consultant. However, the ALJ afforded "great weight" to the objective findings and testing of urologist, Bradford Black, M.D., which revealed that Moruzzi had no limitations resulting from her kidney disease. Considering Moruzzi's age, education, work experience, and residual functional capacity (RFC), the ALJ concluded that Moruzzi was not disabled and was capable of making a successful adjustment to other work.

Moruzzi timely appealed, but the Appeals Council denied her request for review. After exhausting her administrative remedies, Moruzzi filed a complaint in the district court. The magistrate judge recommended that the court affirm the ALJ's decision and dismiss Moruzzi's complaint in its entirety. The district court, overruling Moruzzi's objections, adopted in part and

rejected in part the Report and Recommendation, and affirmed the decision of the Commissioner. Moruzzi timely appealed.

## II.

Although we review a district court's decision to deny disability benefits de novo, we are "limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)).

## A.

On appeal, Moruzzi asks this court to reverse the district court's decision upholding the Commissioner's determination that she was not disabled because (1) the ALJ failed to properly weigh the medical opinions of Moruzzi's treating physician and failed to provide good reasons for discounting those same opinions; (2) the ALJ failed to properly consider Moruzzi's subjective complaints regarding her mental and physical impairments; and (3) the ALJ did not have substantial evidence to support his RFC determination. Alternatively, Moruzzi asks that the matter "be remanded for a new hearing and a decision that contains reasonable and specific explanations."

A person is disabled within the meaning of the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Federal regulations require ALJs to evaluate disability claims using the following five-step sequential process:

> First, the claimant must demonstrate that [s]he has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show

that [s]he suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that h[er] impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, [s]he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform h[er] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as h[er] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). "The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Id.* (citation omitted).

B.

Moruzzi first argues that the ALJ failed to properly weigh the opinions from her treating physician, Dr. Kaza, and failed to provide good reasons for discounting the opinions as required by 20 C.F.R. § 416.927(c)(2)–(6).[1] We find that the ALJ's decision is supported by substantial evidence. Furthermore, as procedurally required, the ALJ provided good reasons for discounting statements from Moruzzi's treating physician. *See* 20 C.F.R. § 416.927(c)(2).

An ALJ is to "give more weight to opinions from treating sources since '[they] are likely to be . . . most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective . . . that cannot be obtained from the objective medical findings alone or from reports of individual examinations.'" *Wilson*, 378 F.3d at 544 (second alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ must afford

---

[1] Our review is limited to the weight the ALJ afforded to Dr. Kaza's medical opinion. On appeal, Moruzzi also challenges the little weight afforded to the opinions of her primary care physician Mark R. Shivers, M.D. Moruzzi did not present this objection to the district court, however, and has not preserved the issue for appellate review. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review." (alteration in original) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987))).

controlling weight to the opinion of a treating source if the ALJ "finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ determines that controlling weight should not be afforded to a treating physician's opinion, however, the ALJ must still determine how much weight to give it by considering a number of factors, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)).

The regulation also makes clear that an ALJ must "always give good reasons . . . for the weight" given to the treating source's medical opinion. 20 C.F.R. § 416.927(c)(2). "Because the reason-giving requirement exists to ensure that each denied claimant receives fair process, we have held that an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence . . . ." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal quotations, emphasis, and alterations omitted).

Here, the ALJ gave little weight to Moruzzi's treating physician, Dr. Kaza. The ALJ determined that Dr. Kaza's statements that Moruzzi would not be able to perform even low-stress work and would be absent from work more than three times per month as a result of her impairments were inconsistent with the evaluation and treatment notes in the record. The ALJ first summarized Dr. Kaza's findings, highlighting the results of psychiatric evaluations conducted in January 2013 and April 2015:

> The mental status examination revealed that [Moruzzi] was well groomed and of average build. Her demeanor was mistrustful and withdrawn. [Moruzzi's] eye contact was avoidant and her activity was slowed. Her speech was clear but pressured. No delusions or self-abuse was evident or reported. She appeared to have evidence of obsessional and phobic behavior. She also appeared preoccupied and guarded. She reported auditory hallucinations. Her thought process was logical but blocked. [Moruzzi's] mood was depressed anxious and irritable. Her affect was flat and labile and she cried. [Moruzzi] was cooperative but withdrawn and she exhibited impairment of concentration and memory. Her estimated intellectual functioning was average. She displayed good insight and judgment and she was pleasant and verbal. Dr. Kaza assessed dysthymic disorder not otherwise specified; and major depressive disorder, recurrent. He assigned [Moruzzi] a Global Assessment of Functioning (GAF) rating of 55, or moderate impairment according to the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, Fourth Edition, page 32 or page 34 in the Revised Text (DSM-IV). [She] was prescribed Vistaril, Prozac, and Xanax. (Exhibit 7F)
>
> [Moruzzi] entered counseling at Comprehensive Behavioral Health Associates but her attendance was sporadic. She was readmitted for counseling on May 23, 2014. (Exhibit 10F)
>
> On April 17, 2015, Dr Kaza performed a second psychiatric evaluation. It was noted that [Moruzzi's] paranoia and depression had slightly improved and her nightmares were improved. During this mental status examination, [Moruzzi] was well groomed, and presented with an average demeanor. Her eye contact remained avoidant and she remained preoccupied and guarded. She reported no self-abuse, aggressiveness or hallucinations. [Moruzzi's] thought processes were logical. [Her] mood remained depressed and anxious and irritable. Her affect was flat and labile with mood swings. She was cooperative with good insight and judgment. She was verbal and pleasant and her estimated intellectual functioning was average. Dr. Kaza diagnosed depressive disorder, not otherwise specified; adjustment disorder, with anxiety; and major depressive disorder, recurrent without psychosis. She was prescribed Trazadone; Valium and Latuda. Dr. Kaza reported that the intensity of the claimant's symptoms were [sic] moderate. (Exhibit 13F)

The ALJ then made clear that he found some of Dr. Kaza's statements inconsistent with his reports that Moruzzi had moderate impairments and had recently shown some improvement.

An ALJ is tasked with evaluating the medical evidence presented to him to determine whether a claimant is disabled. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726–27 (6th Cir. 2013). Moruzzi has not shown that the ALJ improperly substituted his lay opinion for the doctor's opinion. *See Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x 462, 470–71 (6th Cir. 2006) (per

curiam) (noting that an ALJ sufficiently addresses medical opinions from treating physicians by indirectly attacking the opinions' supportability and consistency when compared to the record as a whole); *cf. Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.").

Here, as required, the ALJ acknowledged that Dr. Kaza was a treating physician and addressed his in-depth findings. The ALJ announced the weight he gave Dr. Kaza's statements, acknowledged the length of the treatment relationship, addressed Moruzzi's sporadic attendance for treatment, and determined that Dr. Kaza's conclusions were inconsistent with his evaluations and treatment notes. The ALJ explained his reasoning for affording such weight to opinions from Dr. Kaza, pointing specifically to the noted improvements and the fact that Moruzzi "has received no constant ongoing treatment for depression and anxiety."

Substantial evidence supports the ALJ's decision. In January 2013, Moruzzi was examined by Barbara Marsch, L.I.S.W., of Comprehensive Behavioral Health Associates (CBHA) following her complaints of depression. Marsch recommended a "psychiatric eval[uation,] med management[, and] counseling." Moruzzi visited CBHA for the recommended treatment approximately twelve times between February and October of 2013. Moruzzi was treated by Dr. Kaza, a psychiatrist at CBHA. During Moruzzi's initial visit with Dr. Kaza, she was diagnosed with depressive disorder, prescribed medication, and instructed to follow up. Dr. Kaza's diagnosis was based on Moruzzi's "appetite disturbance with weight change, sleep disturbance, mood disturbance, recurrent panic attacks, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideations or attempts, social withdrawal or isolation, and decreased energy." But in June and September of that same year,

Marsch reported that Moruzzi was "engaging and cooperative," had improved with her mood and depression, had not had any recent panic attacks, and had zero anxiety. Furthermore, when Moruzzi visited the emergency room in September 2013 for a rash, the physician reported that her "[m]ood and affect [was] normal."

Around that time, in the same August 2013 report in which Dr. Kaza concluded that Moruzzi would not be able to tolerate low-stress work, Dr. Kaza reported that Moruzzi had only moderate limitations to her ability to respond appropriately to changes in the work setting, to carry out simple instructions, to work with others without being distracted, and to ask simple questions or request instructions. Dr. Kaza also reported that Moruzzi was able to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, though he reported moderate limitations when interacting with the general public.

Between October 2013 and May 2014 (when Moruzzi returned to CBHA and requested readmission), there are no reports of Moruzzi seeking treatment for any mental impairments. Nearly one year after Moruzzi's return to CBHA, Dr. Kaza noted improvement and again expressed that Moruzzi had only moderate impairments. He stated that Moruzzi's nightmares had improved and her paranoia and depression improved slightly. Moruzzi had "[g]ood insight [and] judgement" and was verbal and pleasant. According to Dr. Kaza, his August 2013 medical opinion remained accurate in June 2015 when he submitted his narrative report.

The ALJ's analysis satisfies the regulatory requirement that the ALJ provide good reasons for not affording controlling weight to opinions of a treating physician. *See Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) (noting that an ALJ properly affords little weight and provides "good reasons" where he explicitly states that he is aware of the usual deference given to a treating physician's opinion and considers the overall findings of the treating physician,

though not supported by clinical data). While Dr. Kaza's questionnaire reveals "markedly limited" activities, we note that the ultimate findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406 (alteration in original) (quoting *Mullen*, 800 F.2d at 545). Here, substantial evidence supports the ALJ's decision to discount Dr. Kaza's medical opinion. The ALJ provided good reasons for affording little weight to Dr. Kaza's statements that Moruzzi would not be able to perform even low-stress work and would be absent from work more than three times per month as a result of her mental impairments. Therefore, this court defers to an ALJ's finding, backed by substantial evidence.

## C.

Moruzzi next challenges the ALJ's evaluation of her subjective complaints, arguing that the ALJ failed to properly consider her statements regarding her mental and physical impairments. However, we find that the ALJ properly evaluated Moruzzi's subjective complaints and, in a clear and concise paragraph at the close of his evaluation, explained why he discounted their severity. The ALJ stated:

> After careful consideration of the evidence, the undersigned finds that [Moruzzi's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Moruzzi's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

> [Moruzzi] is not fully credible as to the nature and extent of her symptoms and limitations. [Moruzzi's] allegations of pain are inconsistent with the objective evidence of record. Radiology studies show on[ly] mild to moderate degenerative disc disease of the lumbar spine. In addition, physical examinations that have been

performed due [sic] not indicate pain at the level alleged by the claimant. The claimant testified that she takes no medication for pain and has no ongoing physical therapy or other types of treatment. This is inconsistent with her alleged level of pain. The evidence does not show any ongoing symptoms of renal failure. Concerning her mental impairments, the claimant has received no constant ongoing treatment for depression and anxiety. Mental status examinations that have been performed indicate that the claimant has no more than moderate limitations.

According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability." We are to first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773 (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

We first review what Moruzzi classifies as her worst problem—her back pain. In May 2012, Moruzzi had an MRI of her lumbar spine in response to her complaints of leg and hip pain. The findings revealed "[m]ild to moderate facet hypertrophic degenerative changes" at L4-L5 and L5-S1 as well as "two closely adjacent . . . cysts in the lateral aspect of the left kidney." The MRI also showed "mild central canal stenosis" at L4-L5, but "[o]verall, no significant central canal stenosis" at L5-S1.

In August 2013, an independent medical consultant, Sushil M. Sethi, M.D., performed a physical examination of Moruzzi. He noted that there was mild lumbar spine tenderness in the midline at L4-5 and S1. The range of motion of the thoracic spine was normal. "All joints

show[ed] normal range of motion." Moruzzi was able to "walk on [her] tiptoes and heels and c[ould] squat." Furthermore, "[h]er gait on the level surface [wa]s normal." Dr. Sethi concluded that Moruzzi's "ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects [wa]s normal."

Moruzzi also complained of kidney cysts causing her to be disabled. The ALJ gave great weight to medical opinions from Dr. Black, Moruzzi's treating urologist, who opined that Moruzzi had no limitations resulting from her kidney disease because Dr. Black's opinion was "based on his field of expertise and [wa]s supported by objective findings and objective testing." Based on Moruzzi's visits between 2010 and 2012, Dr. Black diagnosed her with gross hematuria and cysts on her left and right kidneys. But following the initial diagnosis of gross hematuria in May 2010, no hematuria or abnormal cells were noted in Moruzzi's urine in December 2010, June 2011, and June 2012. Additionally, over time, Dr. Black noted that the cysts remained the same and that no surgical procedure was necessary. He stated, "No limitations from our area. Small [c]ysts do not limit work activity." In 2013, following a renal ultrasound, Dr. Black again confirmed that the small cysts "should not cause a problem."

One year later, in July 2014, Dr. Black performed a computed tomography (CT) scan and examined Moruzzi following her complaints of "frequency and right flank pain." The CT of her urinary tract showed cysts in her right and left kidneys. But Dr. Black again opined that "[t]hese cysts do not look like they need anything done to them" and that "it is good just to leave [them] alone."[2] One week later, Dr. Black saw Moruzzi again and reported that her "urodynamics look[ed] good."

---

[2] Dr. Black had made the same observation one year prior.

Dr. Black continued to see Moruzzi through November 2014. He reported that Moruzzi underwent "the pelvic floor biofeedback," and it appeared that she was better. He reported that she was not taking any medications and would see her on an as-needed basis. He did not report any ongoing concerns for Moruzzi or her ability to work.

Moruzzi, "adamant about undergoing a completion thyroidectomy," underwent the procedure in February 2015. Following the procedure, Joyce J. Shin, M.D., from the Cleveland Clinic Endocrinology and Metabolism Institute Department of Endocrine Surgery examined Moruzzi, reporting that Moruzzi was "well-appearing" and her "transverse cervical incision ha[d] healed well without evidence of infection or seroma."

This evidence does not cast doubt on the ALJ's determination. While there is objective medical evidence of underlying physical conditions, substantial evidence supports the ALJ's determination that this evidence neither confirms the severity of Moruzzi's pain nor supports the conclusion that Moruzzi's objectively determined physical conditions are so severe that they might be reasonably expected to produce disabling pain. *See Buxton*, 246 F.3d at 773.

According to Moruzzi, her back pain and kidney cysts have rendered her disabled as defined in the Act. *See* 42 U.S.C. § 423(d)(1)(A). However, Dr. Sethi performed a physical examination of Moruzzi and, "[b]ased on [his] objective findings," concluded that Moruzzi's ability to do work-related physical activities was normal. Dr. Black also examined Moruzzi, performed CT scans of her urinary tract, and opined that she had no limitations. He noted that "[s]mall [c]ysts do not limit work activity." Furthermore, even though Moruzzi claimed these impairments were significant enough to amount to disability, she testified that she takes no medication for pain and has no ongoing physical therapy or other types of treatment. She testified that she climbs stairs to her apartment twice a day, walks out to get the mail daily, goes to the

grocery store and to the doctor with some assistance, dresses herself, showers herself, and cleans herself. She also testified that she prepares meals daily with her daughter's help, does laundry, and sometimes washes dishes. Giving deference to the ALJ, who had the opportunity to observe Moruzzi and judge her subjective complaints, *Buxton*, 246 F.3d at 773, we conclude that there is substantial evidence to support the ALJ's decision to discount Moruzzi's subjective complaints regarding the severity of pain from her physical impairments.

The record also contains objective medical evidence of underlying mental impairments evidenced by medical notes from CBHA. Following an initial evaluation with Moruzzi, Marsch recommended a "psychiatric eval[uation,] med management, [and] counseling." Dr. Kaza diagnosed Moruzzi with depressive disorder. She was prescribed medication and was instructed to follow up with counseling. Moruzzi did, though her attendance was sporadic.

But because Moruzzi had only moderate limitations, showed improvement, and sought no constant treatment for her mental limitations, the ALJ was justified in concluding that this objective medical evidence did not confirm the severity of her subjective reports of mental impairments; and Moruzzi's medical condition is not of such a severity that it could reasonably be expected to produce the alleged disabling pain. *See Buxton*, 246 F.3d at 773. Moruzzi testified that it is difficult for her to concentrate because her "thoughts are always racing." She also testified that she only gets about four hours of sleep each night because of her pain and racing thoughts. Moruzzi does not drive because she gets anxious and angry with the people on the road. However, Dr. Kaza reported that Moruzzi would have only moderate limitations to her ability to respond appropriately to changes in the work setting, to carry out simple instructions, to work with others without distraction, and to ask simple questions or request instructions. Dr. Kaza also reported that Moruzzi was able to maintain socially appropriate behavior and adhere to basic standards of

neatness and cleanliness. And for seven months, there are no reports of Moruzzi seeking treatment for any mental impairments. Therefore, the ALJ's decision to afford little weight to the alleged severity of her mental impairments is supported by substantial evidence. Accordingly, the ALJ's determination as to the weight afforded to Moruzzi's subjective physical and mental complaints is supported by substantial evidence.

## D.

Moruzzi last argues that the ALJ did not have substantial evidence to support his RFC determination. She claims that the ALJ "failed to cite any *specific* medical facts or even persuasive non-medical evidence that exhibits a foundation for [his] conclusion regarding Ms. Moruzzi's physical or mental RFC" and "committed reversible error by failing to give good reasons for entirely rejecting [Dr. Kaza's] findings that Ms. Moruzzi has greater mental limitations than found in the ALJ's RFC."[3] (Emphasis in original.) We conclude that the ALJ's RFC determination was supported by substantial evidence.

RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). Here, the ALJ found that Moruzzi had the RFC to perform "light work," which is defined as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requir[ing] a good deal

---

[3] Our review is limited to the ALJ's mental RFC determination because Moruzzi did not object to the ALJ's findings regarding her *physical* RFC below. *See McClanahan*, 474 F.3d at 837.

of walking or standing" or "involv[ing] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). A person must be able "to do substantially all of these activities" in order "[t]o be considered capable of performing a full or wide range of light work." *Id.* The ALJ summarized Moruzzi's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations: requires a sit/stand option allowing the person to briefly, for one to two minutes, alternate sitting or standing positions at thirty minute intervals without going off task; can occasionally climb ramps and stairs, balance, stoop, kneel, crunch, crawl but can never climb ladders, ropes or scaffolds; must avoid concentrated exposure to extreme cold and heat, wetness and humidity, and all exposure to unprotected heights, hazardous machinery, and commercial driving; work is limited to simple, routine, and repetitive tasks, requiring only simple decisions, free of fast-paced production requirements, with few workplace changes; and requires no more than occasional interaction with the public, co-workers, and supervisors.

Based on this RFC and testimony from the vocational expert, the ALJ concluded that Moruzzi could not perform her past work but could perform the requirements of a mail clerk, an office assistant, and a bench assembler.

We decide only whether there was substantial evidence to support the ALJ's RFC determination. *See Blakley*, 581 F.3d at 406. If so, we defer to that decision even in the face of substantial evidence supporting the opposite conclusion. *Id.*

The ALJ supported his mental RFC determinations with reports from Dr. Kaza, Moruzzi, and Dr. Shivers. The ALJ considered the evidence in the record and concluded that Moruzzi could work in positions that were limited to simple, routine, and repetitive tasks; that required only simple decisions; that were free of fast-paced production requirements, with few workplace changes; and that required no more than occasional interaction with the public, co-workers, and supervisors. The ALJ undertook a full evaluation of the medical record when determining the RFC, and substantial evidence supports the ALJ's conclusions. Considering the above evidence,

which the ALJ carefully documented as support for the RFC finding, we cannot say that the ALJ erred.

* * *

We AFFIRM the judgment of the district court in favor of the Commissioner.